IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLONY NATIONAL INS. CO.,              :        CIVIL ACTION
as successor in interest to            :
PREFERRED NATIONAL INS. CO.,           :
    Plaintiff                        :
                                     :
    v.                               :
                                     :
HING WAH CHINESE RESTAURANT and        :
ZU ZHONG LI,                           :
    Defendants                       :        NO. 06-2545

## <u>MEMORANDUM AND ORDER</u>

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

      In this diversity action, Plaintiff, Colony National Insurance Company

("Plaintiff"), seeks a judicial determination that it has no duty to insure, defend or

indemnify Defendants, Hing Wah Chinese Restaurant ("Hing Wah") and Zu Zhong Li, in

litigation pending in the Bucks County Court of Common Pleas, in the Commonwealth of

Pennsylvania.  Presently before the Court is Plaintiff's motion for summary judgment

(Doc. No. 17) and Hing Wah's response thereto (Doc. No. 18).[1]  After holding oral

argument and allowing supplemental briefing (Doc. No. 22), I will grant the motion and

enter judgment in favor of Plaintiff.

---

[1]Although the complaint was served on him, Defendant Zu Zhong Li has failed to appear, answer or otherwise participate in the litigation.  For this reason, and in light of my ruling on Plaintiff's motion, I will grant Plaintiff's request for a default judgment against Defendant Zhu Zhong Li by separate Order.  <u>See</u> Fed. R. Civ. P. 55(b)(2) (authorizing entry of default judgment against properly served defendant who failed to plead or otherwise defend action); <u>Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.</u>, 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . ., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").

I.    **FACTS AND PROCEDURAL HISTORY**

The following facts are not disputed by the parties.  Hing Wah is a Chinese restaurant located in Levittown, Bucks County, a suburb of Philadelphia.  It is owned and operated by Ji Xi Yang and his wife, Yim Li Yang.  The restaurant first opened in 1997, at which time it did not offer food delivery service.  See Yim Li Yang Dep. 04/19/07, at 29.

On March 28, 1998, the owners of Hing Wah executed an application for insurance that had been completed at Sunrise Insurance Services ("Sunrise"), an insurance broker in the Chinatown section of Philadelphia.  In the insurance application, Hing Wah is described as a "small restaurant with a few tables, no table service, T/O only."  See Restaurant/Tavern Application, attached to Ji Xi Yang Dep. 03/27/07.  The parties agree that "T/O" refers to "take-out" service.  (N.T. 01/14/08, at 9).  According to the owners of Hing Wah, they were not asked by the insurance broker whether they did or did not deliver food.  See Yim Li Yang Dep. 04/19/07, at 22, 26-28; Ji Xi Yang Dep. 03/27/07, at 48.  At the time the insurance application was executed, Hing Wah had not started delivering food.  See Yim Li Yang Dep. 04/19/07, at 30.

Based upon the insurance application, a Commercial General Liability Policy of Insurance (the "Policy") was issued to Hing Wah, effective April 2, 1998.[2]  Sometime after April 2, 1998, Hing Wah began to deliver food in order to increase business and

---

[2]The parties are unclear as to the name of the original insurance provider.  (N.T. 01/14/08, at 10-13).

revenue.  Id. at 29-30; Ji Xi Yang Dep. 03/27/07, at 23.  However, there was no communication between Hing Wah and the insurer regarding coverage for food delivery. (N.T. 01/14/08, at 12).

Upon renewal of the Policy on April 2, 1999, coverage was placed with Preferred National Insurance Company ("Preferred National").[3]  (N.T. 01/14/08, at 10-12).  The coverage period for the Policy issued by Preferred National began on April 2, 1999, and ran through April 2, 2000.  (N.T. 01/14/08, at 15).  The parties agree that the Preferred National Policy is identical to the original policy and was based on the same March 28, 1998, application.  (N.T. 01/14/08, at 10-13).  In July 2000, Plaintiff purchased Preferred National and assumed all of the rights, obligations, and interests of Preferred National pursuant to the Policy.  (N.T. 01/14/08, at 23).

Meanwhile, sometime in January 2000, Defendant Zu Zhong Li began working for Hing Wah.  On January 27, 2000, Zu Zhong Li was delivering food for Hing Wah while driving a car owned by Wen Qui Li.  (N.T. 01/14/08, at 23).[4]  It is alleged that on that

---

[3]According to the parties at oral argument, Preferred National was not a successor-in-interest to the insurance company that issued the original policy.  (N.T. 01/14/08, at 10-13).

[4]The parties dispute Zu Zhong Li's employment status.  Nevertheless, the parties agree that in approximately January 2000, the owners of Hing Wah contacted an employment agency in New York requesting that a delivery person be referred to the restaurant because the delivery person the restaurant previously employed had become unavailable.  Hing Wah indicated that the delivery person would be paid on an hourly basis and could keep his tips, but that he would drive his own car and be responsible for his own insurance and gasoline.  The agency referred Wen Qui Li, who owned a car, and he, in turn, referred Zu Zhong Li as the driver.  Hing Wah did not pay the New York employment agency for referring a delivery person, and there was no written contract between Hing Wah and Zu Zhong Li.  (N.T. 01/14/08, 16-23).  I do not have to decide Zu Zhong Li's employment status to rule on Plaintiff's motion for summary judgment.

date, Zu Zhong Li negligently operated the car, causing a second vehicle to swerve and strike a snow embankment. Brian Lee was a passenger in the second vehicle.

On or about October 10, 2001, Brian Lee filed a lawsuit against Ji Yang d/b/a Hing Wah Restaurant, Zu Zhong Li and Wen Qui Li, in the Court of Common Pleas of Bucks County, Pennsylvania (the "Bucks County Action"), seeking damages arising from the January 27, 2000, motor vehicle accident. The Bucks County Action is docketed at 01006563 18-2, and is presently ongoing.

On June 14, 2006, Plaintiff commenced this declaratory judgment action in federal court, and on July 20, 2007, the parties consented to proceed before me. On October 8, 2007, Plaintiff filed a motion for summary judgment, and on November 15, 2007, Defendant Hing Wah filed a response to the motion. Oral argument on Plaintiff's motion was held on January 14, 2008, after which the parties were directed to provide supplemental briefing. The matter is now ripe for my consideration.

## II.   STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty

4

Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact."  Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000).  The evidence presented must be viewed in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

## III.    DISCUSSION

### A.    Construction of an Insurance Policy Under Pennsylvania Law

Because the damages underlying the Bucks County Action occurred during the course of food delivery, the threshold issue in this case is whether the Policy provides coverage for claims arising out of the delivery of food.  Jurisdiction in this case is based on diversity of citizenship.  Therefore, the court must apply the choice of law rules of the state whose law governs the action.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  It is undisputed that the Pennsylvania courts would apply Pennsylvania law to this action.

Under Pennsylvania law, "[t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." Murphy v. Duquesne Univ. of The Holy Ghost, 777 A.2d 418, 429 (Pa. 2001). "In most cases, 'the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations.'" Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997) (quoting Bensalem Twp. v. International Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994)); see also Nationwide Mut. Ins. Co. v. Daily ex rel. Repetto, 2003 WL 22246951, at *3 (E.D. Pa. Sept. 26, 2003) (in context of declaratory judgment action, federal court must "ascertain the intent of the parties as manifested in the writing") (citing Mutual Benefit Ins. Co. v. Haver, 725 A.2d 743, 746 (Pa. 1999)).

Thus, although Pennsylvania courts focus on the contracting parties' reasonable expectations, the starting point in the construction of an insurance policy is the policy language. "Where the language of the [insurance] policy is clear and unambiguous, a court is required . . . to enforce that language. . . . If possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." Little v. MGIC Indem. Corp., 836 F.2d 789, 793 (3d Cir. 1987) (citing Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983); Houghton v. American Guar. Life Ins. Co., 692 F.2d 289, 291 (3d Cir. 1982)); see also Hertz Corp. v. Smith, 657 A.2d 1316, 1317 (Pa. Super. 1995) ("[W]hile reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, . . . an insured may

not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.") (citations omitted).  Where a provision in an insurance policy is ambiguous, that provision is construed against the insurer.  <u>Kvaerner Metals Div. of Kvaerner U.S. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006).

Here, Plaintiff argues that the Policy clearly and unambiguously indicates that the parties never contemplated food delivery as part of Hing Wah's business, and that no insurance for such activity had been purchased.  <u>See</u> Pl.'s Mem. at 5-7.  Defendant Hing Wah counters that the Policy is ambiguous with regard to coverage for food delivery, and that Hing Wah reasonably expected that food delivery would be covered.  <u>See</u> Def.'s Br. at 7-11.

### B.     The Meaning of the Term "Restaurant" Under Pennsylvania Law

I begin, then, with the language of the Policy.  The parties focus on three provisions of the Policy that impact the threshold issue of coverage.  First, the Policy requires Plaintiff  to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and "to defend against any 'suit' seeking those damages."  <u>See</u> Policy, Section I-Coverages," para. 1.a, attached to Pl.'s Motion at Ex. "A."  Second, the "Classification Limitation Endorsement" portion of the Policy states that "[c]overage under this policy is specifically limited to those operations described in the declarations under 'Classification.'  No other operations

7

by the insured or by anyone for whose actions the insured is responsible are covered."

See Policy, "Classification Limitation Endorsement," attached to Pl.'s Motion at Ex. "A."

Third, the classifications found on the "Declarations" page of the Policy are the

following:

> Classification
> Products and Completed Operations
> REST W/SALES ALCOHOLIC BVRG LESS 75% NO DANCE FLR
>
> All Other
> REST W/SALES ALCOHOLIC BVRG LESS 75% NO DANCE FLR
> PARKING PUBLIC OPEN AIR

See Policy, "Commercial Liability Declarations," attached to Pl.'s Motion at Ex. "A."

The parties agree that "REST" refers to "restaurant," and that the Policy therefore covers

the operations of a restaurant.

Plaintiff argues that because the classification description of Hing Wah's

operations on the "Declarations" page of the Policy does not include food delivery,

coverage cannot be extended to Hing Wah in the underlying Bucks County Action.

Additionally, Plaintiff argues that, although the Policy is silent as to food delivery, the

restaurant classification section typically describes the operations the restaurant engages

in, rather than operations the restaurant does not engage in.  (N.T. 01/14/08, at 26-27).  It

follows that, since the classification section of the Policy is silent as to food delivery,

there is no coverage for that activity.

I agree that the "Declarations" page is silent with regard to food delivery, and that the omission strongly suggests that the parties did not contemplate that food delivery would be covered by the Policy.  Nevertheless, Defendant Hing Wah argues that the classifications are ambiguous and, with regard to the phrase "ALCOHOLIC BVRG LESS 75%," even "incomprehensible."  <u>See</u> Def.'s Br. at 8.[5]  More importantly, Hing Wah argues that food delivery is not excluded, and that because there is nothing on the "Declarations" page that says anything about whether the restaurant does, or does not, deliver Chinese food, the owners of Hing Wah reasonably expected that the Policy covered food delivery.

The parties thus dispute the result that flows from the absence of a specific reference to food delivery in the "Declarations" page.  To resolve the parties' conflicting interpretations of the Policy, I must explore what it means to operate a "restaurant."[6]

The Policy in question does not provide a definition for "restaurant."  <u>See</u> Policy, "Section V – Definitions," attached to Pl.'s Mem. at Ex. "A."  The Pennsylvania legislature has not defined the term for insurance purposes, and has had limited occasion

---

[5]These terms were explained by Michelle Hunt, an employee of Plaintiff Colony National. At her deposition, Ms. Hunt explained that "[r]estaurant with sales of alcoholic beverages less than 75 percent, no dance floor" means a restaurant where alcohol sales constitute less than 75 percent of revenue, and that "if there is more than 75 percent, we would not classify it as a restaurant.  We'd probably classify it as a bar."  <u>See</u> Hunt Dep., at 34-35.

[6]The "Declarations" page shows that the Policy covers the operations of both the restaurant and an open-air parking area.  The parties do not suggest that coverage for the parking area is relevant to Plaintiff's liability and, therefore, I will confine my analysis to the restaurant coverage.

to define it for other purposes.  The Pennsylvania Clean Air Act defines "restaurant" broadly as "any eating establishment which offers food for sale to the public," <u>see</u> 35 P.S. §1230.1.  The Pennsylvania Liquor Code includes a more narrow definition.  <u>See</u> 47 P.S. §1-102 (defining "restaurant" as "a reputable place operated by responsible persons of good reputation and habitually and principally used for the purpose of providing food for the public, the place to have an area within a building of not less than four hundred square feet, equipped with tables and chairs, including bar seats, accommodating at least thirty persons at one time").

Pennsylvania case law provides no controlling precedent, and the closest the Pennsylvania courts have come to defining the term "restaurant" is in the context of zoning disputes.  In 1956, in the absence of a definition in a local zoning ordinance, the Pennsylvania Supreme Court looked to the dictionary definition of "restaurant" and concluded that the definition "no doubt assumes that the refreshments are to be eaten on the premises."  <u>Food Corp. v. Zoning Bd. of Adjustment of Philadelphia</u>, 121 A.2d 94, 95 (Pa. 1956) (holding that establishment where patrons would purchase food and then eat the food in their cars in parking area was a "restaurant" because food was eaten "on the premises").  <u>Food Corp.</u> strongly suggests that the Pennsylvania Supreme Court would apply a similar dictionary definition to the term "restaurant" in the insurance context as well.

10

I recognize that the relevance of <u>Food Corp.</u> might fairly be questioned insofar as it was decided before food delivery became commonplace in urban and suburban settings. Nevertheless, more recent cases suggest that local governments continue to generally define "restaurant" as an establishment that serves food on the premises.  <u>See</u>, <u>e.g.</u>, <u>Southco, Inc. v. Concord Twp.</u>, 713 A.2d 607, 609-10 (Pa. 1998) (stating ordinance defined "restaurant" as "a business devoted to the sale and consumption of food and beverages consumed only inside a building while patrons are seated at counters or tables"); <u>Philm Corp. v. Washington Twp.</u>, 638 A.2d 388, 391 n.2 (Pa. Commw. 1994) (stating ordinance defined "restaurant" as "a building in which food is prepared and served to the public for consumption, where waiters or waitresses take orders and serve food to people at tables, booths or counters").

There are also surprisingly few definitions of "restaurant" to be found in other jurisdictions.  According to American Jurisprudence, Second Edition, the term "restaurant" has been defined in the case law as:

> – a place where refreshments, food and drink are served.
> – a place where a person goes only to satisfy an immediate need for food and where that person, rather than the proprietor, selects the particular food at the price fixed for that food.
> – a place where any person who conducts himself or herself properly and is able and willing to pay for it has a right to demand that food be furnished.

40 Am. Jur.2d Hotels, Motels and Restaurants, § 10 (2007) (internal footnotes omitted).[7]  In jurisdictions where the term "restaurant" has no strictly defined legal meaning, the term "is used indiscriminately as a name for any place where refreshments can be had, from a mere eating place to any other place, such as a shop or store, where eatables are furnished to be consumed on the premises."  Id.  Although none of these definitions specifically excludes food delivery, it is telling that none of them incorporates delivery into the definition, and they uniformly suggest that the food is served on-site.

    In the absence of a clear definition rooted in law, "[w]ords of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense," for which the court may consult the dictionary definition of a word.  Kvaerner, 908 A.2d at 897.  Webster's New Collegiate Dictionary (1988) defines "restaurant" as "a public eating place."  Similarly, current online dictionaries typically define the term as "[a] place where meals are served to the public," see http://www.thefreedictionary.com/restaurant (last visited Feb. 3, 2008), or "a business establishment where meals or refreshments may be purchased."  See http://merriam-webster.com/dictionary/restaurant (last visited Feb. 3,

---

[7]To these may be added the statutory definition of "restaurant" in the neighboring state of New Jersey, in a law mandating the display of choke prevention posters in all "restaurants": "[A]ny facility or part thereof in which food is prepared and provided or served for consumption *on the premises* but shall not include mobile food establishments or any temporary food establishments . . . ."  N.J.S.A. 26:3E-1 (emphasis added).

2008).[8]  Again, these definitions imply that the food is provided on the premises, and they are consistently silent as to delivery service.[9]  Thus, as in <u>Food Corp.</u> in 1956, modern definitions of "restaurant" assume that food is available "to be eaten on the premises," <u>see</u> 121 A.2d at 95, or that it is otherwise provided to patrons on-site.

Lastly, but certainly not least, the meaning of a term can be derived from observations borne from experience, and common sense.  All restaurants are in the business of preparing food for human consumption.  Broadly speaking, while some restaurants only serve food to patrons on the premises, others specialize in drive-through, take-out, catering and/or delivery service, and still others offer some combination thereof.  To further confuse things, some businesses that are not generally considered restaurants, such as supermarkets, also prepare food, and some of these also have tables for dining or offer take-out, catering and/or delivery service.  The important thing is that, whereas all restaurants prepare food for human consumption, not all restaurants take that food off-site

---

[8]The term's French root verb "restaurer," meaning "to restore," provides no assistance. <u>See</u> Webster's New Collegiate Dictionary (1988).  However, this should come as no surprise, given the fact that restaurant food delivery is a comparatively recent phenomenon.

[9]The broadest definition of the term "restaurant" may be found on Wikipedia, the online encyclopedia drafted by internet users: "A restaurant is a retail establishment that serves prepared food to customers.  Service is generally for eating on premises, though the term has been used to describe take-out establishments and food delivery services."  <u>See</u> http://en.wikipedia.org/wiki/restaurant (last visited Feb. 3, 2008).  This definition is clearly in the minority in specifically referencing food delivery services as falling within the meaning of the term "restaurant."

and deliver it to their customers.  Because not all restaurants deliver food, it logically follows that food delivery is not an inherent part of operating a restaurant.

The above authorities, taken as a whole, strongly suggest that the Pennsylvania Supreme Court would conclude that the term "restaurant" is unambiguous, and that it does not encompass Hing Wah's food delivery business.[10]  Moreover, notwithstanding Hing Wah's arguments to the contrary, this construction is entirely consistent with the reasonable expectation of the parties.

### C.    The Parties' Reasonable Expectations

Hing Wah contends that the Policy is ambiguous and that I should therefore rely on the reasonable expectations of the owners that their food delivery business would be covered.  However, even if I were to conclude that the term "restaurant" is ambiguous,

---

[10]While Hing Wah has not relied on it, one other provision of the Policy has potential relevance to the question of coverage.  In a section entitled "Limitation of Coverage to Designated Premises or Project," the Policy provides that "[t]he insurance applies only to . . . injury . . . arising out of . . . [t]he ownership, maintenance or use of the premises in . . . operations necessary *or incidental* to those premises."  See Policy, attached to Pl.'s motion at Ex. "A" (emphasis added).  Although it could be argued that Hing Wah's delivery business was "incidental" to its restaurant business, that argument must also be rejected.  Black's Law Dictionary defines "incidental" as "[s]ubordinate to something of greater importance; having a minor role."  Black's Law Dictionary 777 (8th ed., 2004).  Here, the phrase "necessary or incidental" is followed by "to those premises," meaning the premises that are the subject of the Policy, namely the restaurant and parking area.  Necessary operations of these premises would include food preparation and maintenance of the parking area, while incidental operations would include, for example, advertising, taking delivery of a new refrigerator or shoveling snow from the entrance.  Because I conclude that the Policy does not contemplate food delivery from the premises, such delivery cannot logically be considered necessary *or incidental* to the operation of the premises.

there is absolutely nothing in the record to suggest that anyone expected that the Policy would cover Hing Wah's delivery business.

Yim Li Yang testified that she was asked a few questions by personnel at the Sunrise insurance brokerage, and that Sunrise personnel filled out the insurance application which gave rise to the Policy.  See Yim Li Yang Dep. 04/19/07, at 22, 26-28. She further testified that she was never asked whether the restaurant delivered food.  Id. at 40.  Similarly, her husband testified that "[t]he broker did not ask me whether I delivered food or not."  See Ji Xi Yang Dep. 03/27/07, at 48.  Because the owners of the restaurant were never asked about delivery when they submitted the original insurance application, Hing Wah argues that they were never placed on notice that they needed to obtain insurance for delivery once they started making deliveries.  See Def.'s Br. at 10.

Nevertheless, significant evidence suggests that Hing Wah was placed on notice that the Policy did not cover food delivery, and that the owners understood that to be the case.  For example, handwriting on the original application filled out at Sunrise characterizes Hing Wah as a "small restaurant with a few tables, no table service, T/O only."  See Restaurant/Tavern Application, attached to Ji Xi Yang Dep. 03/27/07.  At oral argument, the parties agreed that "T/O only" means "take-out only."  (N.T. 01/14/08, at 9).  Presumably, therefore, something was communicated about the services offered by the restaurant at the time of the original application for insurance.  Moreover, consistent with the "T/O only" notation on the application, Yim Li Yang unequivocally testified that

15

Hing Wah had not yet started to deliver food at the time the insurance application was filled out on March 30, 1998.  <u>See</u> Yim Li Yang Dep. 04/19/07, at 29.  As previously noted, there was no communication between Hing Wah and the insurer regarding the start of food delivery.  (N.T. 01/14/08, at 12).

Most importantly, the evidence of record indicates that the parties were aware that the Policy did not cover damages arising from food delivery service at the time of the accident underlying the Bucks County Action.  When the owners contacted the New York employment agency for a delivery driver, they informed the agency that the driver had to have a car and would be responsible for his own car insurance and gasoline.  (N.T. 01/14/08, at 16).  Yim Li Yang stated that when the motor vehicle accident first occurred, she assumed everything would be handled by Zu Zhong Li's auto insurance.  <u>See</u> Yim Li Yang Dep. 04/19/07, at 52.[11]  Similarly, the co-owner of the restaurant testified that he did not initially think the accident was Hing Wah's concern, but rather that Zu Zhong Li should take care of it through his own car insurance.  <u>See</u> Ji Yang Dep. 07/29/03, at 26-27.  At oral argument, counsel for Hing Wah suggested that the owners' testimony may reflect their understanding of insurance coverage in light of coverage denial letters from the insurance company.  (N.T. 01/14/08, at 39-41)  However, the owners' understanding of the coverage as discussed in their deposition testimony preceded any denial of

_____

[11]Yim Li Yang testified that she did not contact Preferred National until after she received a letter from Brian Lee related to the underlying Bucks County Action.  <u>See</u> Yim Li Yang Dep. 04/19/07, at 53.

coverage.  Indeed, they testified clearly that the did not think the Policy covered the

accident, and that they expected other insurance to cover it.  Thus, the testimony strongly

suggests that the actual expectation of the parties was that the Policy would not cover

Hing Wah for damages arising from food delivery.[12]

Hing Wah argues that, regardless of what may be true about restaurants in general,

the reasonable expectations of the insured in this case differ insofar as food delivery is an

inherent part of doing business as a Chinese restaurant.  (N.T. 01/14/08, 35).

Unfortunately for Hing Wah, this argument is belied by the facts in this case.  It is

undisputed that Hing Wah did not deliver food at the time it opened for business in 1997,

and that the restaurant did not commence food delivery until some time in 1998.  See Yim

Li Yang Dep. 04/19/07, at 28-30; Ji Xi Yang Dep. 03/27/07, at 23.  It may well be the

case that Hing Wah started making deliveries in order to improve business.  See Yim Li

Yang Dep. 04/19/07, at 28.  However, that does not mean that all Chinese restaurants of

necessity have delivery as an inherent part of their business.  In any event, the mere fact

that the owners of Hing Wah believed they could open and operate a Chinese restaurant

---

[12]Hing Wah points out that Ji Xi Yang and Yim Li Yang have a limited command of the
English language.  (N.T. 01/14/08, at 35-6).  Hing Wah suggests that this fact precluded the
owners from fully understanding the Policy.  See id.; Def.'s Br. at 8-9.  By extension, this alleged
failure to understand the Policy would affect the owners' reasonable expectations regarding
coverage for food delivery.  However, as discussed, there is significant evidence to suggest that
Hing Wah was placed on notice that the Policy did not cover food delivery, and that the owners
understood that to be the case.  Hing Wah has not cited any authority that allows me to ignore the
plain meaning of the policy terms, or the insured's understanding of those terms, in deference to
the insureds' limited understanding of English.  Therefore, I conclude that the owners' limited
understanding of English does not change the outcome.

without offering to deliver food, and that they did so for many months, seriously undermines the argument that food delivery is inherent or necessary to the operation of a Chinese restaurant.

In evaluating the reasonable expectations of the insured as evidenced by the express language of the Policy, the original application for insurance, deposition testimony and definitions of the term "restaurant," I conclude that the Policy does not provide coverage for food delivery. This conclusion does not conflict with, or render meaningless, any other provision of the Policy. See Boyce v. Smith-Edwards-Dunlop Co., 580 A.2d 1382, 1387 (Pa. Super. 1990) ("[o]ne part of a contract should not be interpreted so as to annul another part and the writings which comprise an agreement must be interpreted as a whole") (citing Shehadi v. Northeastern Nat. Bank of Pa., 378 A.2d 304 (Pa. 1977)).

Perhaps in anticipation of this outcome, Hing Wah argues in the alternative that the Policy covers the negligence of Hing Wah's owners in hiring, supervising or training Zu Zhong Li as a delivery driver.[13] See Def.'s Br. at 12-13; Def.'s Supp. Letter Br., at 1-2.

---

[13]In support of this theory of liability, Hing Wah attached to its responsive brief an affidavit from Dale G. Larrimore, Esquire, counsel in the underlying Bucks County Action. See Larrimore Affidavit, attached to Def.'s Br. at Ex. "D." In the affidavit, Mr. Larrimore states that he will attempt to prove that the two partners who owned Hing Wah at the time of the accident (Ji Xi Yang and Yim Li Yang) were negligent in failing to properly train Zu Zhong Li as a delivery driver. Plaintiff seeks to strike parts of Mr. Larrimore's affidavit as deficient under Federal Rule of Civil Procedure 56(c). See Supplemental Letter Br., at 3-4. Given my disposition of the case, I do not find it necessary to separately rule on Mr. Larrimore's affidavit.

This argument must fail.  The Bucks County Action concerns an alleged injury arising out of activity that I have concluded is not covered by the Policy.  That result cannot be avoided simply by pointing the finger at a different allegedly negligent actor.  Cf. Mutual Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. . . .  [T]o allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the artful use of pleadings designed to avoid exclusions in liability insurance policies.") (internal citations omitted).  Stated another way, having found that the Policy does not contemplate coverage for food delivery, it would be incongruous to conclude that the Policy covers hiring, training and supervision for food delivery.  Therefore, I reject this argument.[14]

## IV.   CONCLUSION

I find that the Policy does not expressly provide coverage for food delivery, and that the word "restaurant" in the declarations section of the Policy is not ambiguous because food delivery is not an inherent or necessary part of operating a restaurant.  Moreover, the evidence of record indicates that the parties were aware – both when the insurance application was made and when the accident occurred – that the Policy did not

---

[14]Because I find that Plaintiff is not obligated to cover any of the damages arising out of the Bucks County Action, I also conclude that Plaintiff has no duty to defend that action.  See Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985) ("[t]he duty to defend remains with the insured until the insurer can confine the [underlying] claim to a recovery that is not within the scope of the policy") (citing Cadwallader v. New Amsterdam Cas. Co., 152 A.2d 484 (Pa. 1959); Seaboard Indus., Inc. v. Monaco, 392 A.2d 738 (Pa. Super. 1978)).

cover damages arising from food delivery service.  Because there are no issues of material

fact in this regard, and because this issue is determinative, I will grant Plaintiff's motion

for summary judgment and enter judgment in favor of Plaintiff, Colony National

Insurance Company, and against Defendant, Hing Wah Chinese Restaurant.[15]  An

appropriate Order follows.

---

[15]Because I find this issue to be determinative, I do not find it necessary to address
Plaintiff's other arguments for summary judgment, namely, that an automobile exclusion in the
Policy applies, and that Zu Zhong Li was not an insured under the Policy.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLONY NATIONAL INS. CO.,              :        CIVIL ACTION
as successor in interest to            :
PREFERRED NATIONAL INS. CO.,           :
    Plaintiff          :
                                       :
    v.                 :
                                       :
HING WAH CHINESE RESTAURANT and        :
ZU ZHONG LI,                           :
    Defendants          :        NO. 06-2545

## <u>ORDER</u>

AND NOW, this 26th day of February, 2008, after consideration of Plaintiff's
motion for summary judgment ( Doc. No. 17), the response in opposition thereto filed by
Defendant, Hing Wah Chinese Restaurant, (Doc. No. 18), and the parties' post-hearing
supplemental letter briefs (Doc. No. 22), it is hereby ORDERED that the Motion is
GRANTED and JUDGMENT IS ENTERED in favor of Plaintiff, Colony National
Insurance Co, and against Defendant, Hing Wah Chinese Restaurant.  A default judgment
shall be entered against Defendant, Zu Zhong Li, by separate Order.

BY THE COURT:

_/s/Elizabeth T. Hey_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

███████████████████████████████████████████████████████████████████████████

---

[10]While Hing Wah has not relied on it, one other provision of the Policy has potential relevance to the question of coverage.  In a section entitled "Limitation of Coverage to Designated Premises or Project," the Policy provides that "[t]he insurance applies only to . . . injury . . . arising out of the . . . ownership, maintenance or use of the premises . . . and operations necessary or incidental to those premises."  See Policy, attached to Pl's. motion at Ex. "A").

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
judgment  ("When a defendant fails to appear . . ., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the defau██ has occurred.").